**Janice Marie JOHNSON, Petitioner,**

v.

**Larry NORRIS, Director Arkansas Department of Correction, Respondent.**

**No. PB–C–95–394.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

March 26, 1998.

---

Winston Bryant, Arkansas Atty. Gen., Little Rock, AR by Tenna L. Watkins, Asst. Atty. Gen., for Petitioner.

Reginald S. McCullough, McCullough Law Firm, Little Rock, AR, for Responent.

## MEMORANDUM OPINION AND ORDER

HOWARD, District Judge.

This is a habeas corpus action which was instituted by petitioner *pro se.* Petitioner strongly asserts, among other claims for relief, that she is actually innocent of the charge of selling to an undercover police officer one rock of cocaine for which she was convicted. For the reasons discussed below, the Court grants the writ.

### BACKGROUND

On April 2, 1991, Thomas Washington, an officer associated with the Narcotics Division of the North Little Rock Police Department, approached a female in the area of 1800 East Washington at approximately 3:00 p. m.[1] Officer Washington asked the female if she had anything to sell, referring to crack cocaine; the female stated that she had only tens. Officer Washington then asked if she had change for a twenty dollar bill, which was buy-money in his possession to purchase drugs.

The female proceeded immediately to re-enter a barber shop that she had just left in order to get change. She returned a few minutes later and handed Officer Washington a small plastic bag containing supposedly one rock of cocaine and proceeded to enter, according to Officer Washington, a late model Chevy Chevette bearing Arkansas license number SPG 907. Officer Washington field tested the substance which tested positive for cocaine. Officer Washington met with his supervisor and returned to the police station where he placed the small plastic bag containing the substance in another plastic bag and placed this bag in an envelope; he taped the envelope and placed his initials on the strip of tape sealing the envelope and placed the envelope in "my locker."[2] The envelope was subsequently submitted to the Arkansas State Crime Laboratory for analysis. Only Officer Washington and his supervisor possessed the combination to the lock securing the locker containing the envelope.

On May 6, 1991, approximately thirty-three days after the alleged sale of the substance to Officer Washington, petitioner was arrested on a charge of delivering a controlled substance to Officer Washington. (T–B.5, 6).[3] However, the felony information

---

1. Officer Washington had recently moved from El Dorado, Arkansas to North Little Rock and had been with the North Little Rock Police Department for only six months.

2. Officer Washington did not describe the female in his field notes, nor did he indicate the female's complexion, height, weight, hair texture or length or describe what she was wearing. Officer Washington had not met the female before or had any dealings with her. However, during the bench trial, he did testify that he had seen the female at a housing project during a surveillance that he had participated in and, consequently, recognized her face.

3. The record of the state court proceedings contain two separate bill of exceptions. The first bill of exceptions relates to the state court proceedings taking place on January 16, 1992, and references to this record are designated as T–A. The second bill of exceptions relates to the state court proceedings taking place on March 13, 1992, and references to this record are designated as T–B. The two state bills of exceptions are under the same cover, but there appears to be some lack of consistency in the page numbering.

References to the record of the evidentiary hearing conducted by this Court are designated as E. H.

initiating the charge was not filed until July 18, 1991. (T–B.1A, 2A). A bench warrant was issued by the Pulaski County Circuit Clerk's Office on July 22, 1991, but the Sheriff's Return on the bench warrant has not been executed. (T–B.7).

Petitioner's state trial initially came on for hearing on January 16, 1992. The court was immediately advised by defense counsel that "she [petitioner] wants a jury trial." Among other exchanges, the following exchange transpired between the trial court and petitioner-defendant:

The Court: Now, let me ask you this question one time, ma'am. Maybe you don't understand me. You have waived a trial by jury after you were informed of you rights to a trial by jury and what the difference would be. Why now, six days later, do you wish to withdraw your waiver?

The Defendant: Because I did it in the beginning because he told me to do it. I didn't know. I was thinking I was going to get 40 years.

The Court: But you had it explained to you by the Court at the time you waived it what your rights were, did you not?

The Defendant: Yes.

The Court: And you said that you understood those rights, did you not?

The Defendant: Yes.

The Court: Has anything changed since that time?

The Defendant: Yes.

The Court: And what has changed?

The Defendant: He called me a thief, and he also said I hated him and told me to leave from his office, and I think that he just lied to me to go in front of the jury. That's what I think.

The Court: Motion to Withdraw Jury Waiver will be denied, ma'am. You haven't given me any reason for changing that, so——
Ma'am, looking at this matter, you first appeared here on August the 21st of 1991. At that time, the case was passed for you to hire an attorney

Ma'am, it appears to me that what the problem is that you're trying to avoid going to trial

The Court: We are going to trial today. (T–A.1–5).

Immediately following the above exchange, the State of Arkansas, through it attorney made the following comment:

Your Honor, all my witnesses are here; however, we're having a little difficulty locating the evidence in this case. And the property officer at the North Little Rock Police Department has been looking diligently since first thing this morning, and he's going though the evidence piece by piece. However, he called back when we were having a recess and said it would probably take him the rest of the day to go through everything ... the State would ask for a continuance in order to locate the evidence. (T–A.9–10).

Without an objection being registered by defense counsel, the trial court continued the matter to March 13, 1992.

During the bench trial of petitioner-defendant on March 13, 1992, the State of Arkansas called two witnesses to establish its case.

Officer Washington identified the petitioner-defendant, who was seated at the defense table, as the person he purchased the crack cocaine from on April 2, 1991, the same day that he was assigned initially to the Narcotics Division of the North Little Rock Police Department, which was his first and only contact with the female (T–B 38). Washington further stated that State's exhibit 1 is the "rock of suspected crack cocaine that he purchased" and offered the following testimony:

Q. Okay. And is that in substantially the same form as when you submitted it to the crime lab?

A. Yes sir. It was in a smaller white plastic bag when I submitted to the crime lab. Apparently, when it was analyzed it was removed. (T–B 43).

On cross examination, Officer Washington stated he could not describe what petitioner-defendant was wearing when he made the purchase, nor could he describe her size, height, weight, hair texture or remember anything about her; and that he only recognizes "her face;" he did not set forth any descriptions in his field notes; and he did not participate in the arrest of petitioner-defendant.

Linda Burdick, a forensic drug chemist associated with the Arkansas State Crime Laboratory, stated that when she received the package, the outer manila envelope was sealed with the initials "TW" written across the tape; that the envelope contained a plastic evidence bag which contained a plastic bag; and that State's exhibit 1 is presently in the same condition when she sealed the package, *"except for the tear up here."*

In further describing the condition of the plastic bag containing the evidence, when she initially received it, Linda Burdick testified:

A. I have one sealed plastic evidence bag with a small zip-lock bag with three pieces of hard white rock like substance. (T–B 65)

On cross examination, Linda Burdick offered the following testimony:

A. This, the little zip-lock bag, was in this bag (indicating) without this diagonal seal and the bottom seal. And the pieces of hard white substance were inside the little zip-lock bag. (T–B 67)

A. Oh, the little zip-lock bag was not sealed. The evidence bag was, but the little zip-locker bag was not sealed.

When questioned by the trial court, Linda Burdick testified:

A. The little zip-lock bag did not have any seal on it. It was just closed. It was zipped. (T–B 70)

On redirect examination, Linda Burdick testified:

A. The zip's been ripped off of it, but the little—I have in my notes that the pieces were inside the little zip-lock bag.

On recross examination, Linda Burdick further testified:

Q. And that was not sealed, correct?

A. Right. There is no seal on the little zip-lock bag. (T–B 71)

The State of Arkansas rested its case and petitioner-defendant called two witnesses, Gail Mallett, a personal friend, and Elroy O'Donald, a brother.

Gail Mallett testified that she had known Petitioner–Defendant for twenty-seven years and Petitioner–Defendant has never owned or possessed a blue Chevette automobile; that Petitioner–Defendant picked her up on the morning of April 2, 1991, at approximately 7:00 a.m. in a brown 98 Oldsmobile; that Petitioner–Defendant carried her to the home of a friend and then to a furniture store and returned to Petitioner's home around 2:00 p.m. Gail Mallett further stated that Petitioner, upon arriving at her home, began preparing food for her family and friends and did not leave her home until four o'clock p. m.; and that she spent the night in the home of Petitioner.

Elroy O'Donald testified that he arrived at his sister's home on April 1, 1991, and spent the night; that Petitioner left home around 7:30 a. m. on the morning of April 2 with Gail Mallett, and returned at approximately 2:00 p. m. and began preparing food and did not leave home until around 4:00 p. m.; that his sister has never owned a blue Chevette automobile; and that she owns a brown 98 Oldsmobile.

Both sides having rested, the trial judge conceded, as argued by defense counsel, that the State's evidence possessed "discrepancies or shortcomings, I am convinced beyond a reasonable doubt that the defendant is guilty of the offense."

On April 10, 1992, Petitioner–Defendant was sentenced to twenty years to the Arkansas Department of Correction on the sale of crack cocaine to Officer Washington. During the proceedings relating to the sale of cocaine, the trial court, pursuant to stipulation

between counsel, took into consideration the State's evidence in the cocaine sale charge in disposing of a pending State motion to revoke Petitioner–Defendant's probation that was imposed in 1989 pursuant to a negotiated plea to a robbery charge which resulted in a sentence of five years in the Arkansas Department Correction. The latter sentence is to run consecutive to the initial sentence.

Petitioner instituted a direct appeal of her conviction to the Arkansas Court of Appeals. Petitioner asserted the following four grounds for relief: (1) That the trial court erred in admitting the cocaine as evidence as the State failed to prove a reliable chain of custody; (2) That the trial court erred in admitting into evidence the identification of the Petitioner as the suspect; (3) That the trial court erred in finding that there was sufficient evidence to convict the Petitioner of the charge of delivery of cocaine; and (4) That the trial court erred in revoking Petitioner's probation. Petitioner's conviction was affirmed by the Arkansas Court of Appeals in an unpublished opinion, *Johnson v. State* CA CE 93–55 on February 23, 1994; and her request for rehearing was denied on April 13, 1994.

On April 12, 1995, Petitioner filed her post-conviction petition, Rule 37.2(c), which was dismissed by the trial court for not having been filed within sixty days of the date that the Arkansas Court of Appeal's mandate was issued.

On July 18, 1995, Petitioner filed her *pro se* petition in this Court raising the following grounds for relief: (1) Actually innocent of charges; (2) Privilege against self-incrimination; (3) Denied effective assistance of counsel; (4) Insufficient evidence; (5) Incorrect location; and (6) Denial of fair and impartial trial.

On August 9, 1995, Respondent made the following response to Petitioner's *pro se* petition:

> Petitioner failed to raise grounds one, two and three in a direct appeal or a Rule 37 petition. Thus, she has procedurally defaulted these claims. Petitioner did raise the fourth ground for relief in state court and it was decided adversely to Petitioner.

On January 31, 1996, this Court, after reviewing the proposed findings and recommendations of the Magistrate Judge that Petitioner's petition be dismissed with prejudice and the record in its entirety, appointed R.S. McCullough, Esq., to represent petitioner in this proceeding and an evidentiary hearing was subsequently scheduled for October 24, 1997.

The following constitutes evidence received during the evidentiary hearing:

Petitioner testified during the evidentiary hearing that she did not sell Officer Washington any drugs on April 2, 1991; that on that date and alleged time, she was at her home preparing food for family members and friends; that she never owned or possessed a Chevy Chevette, but owned a blue Stanza Nissan and a brown 98 Oldsmobile; that there is no "Smitty's Barber Shop" as stated by Officer Washington; that there is a Smith's Barber Shop located in the 1100 Block and not the 1800 Block as stated by Officer Washington. (E.H. 8–10).

Petitioner further related the following regarding the circumstances when she was arrested by police officers approximately thirty-three days after the alleged sale of drugs to Officer Thomas Washington:

A. I was driving my car and lots of police just came up and blocked my car, me and my kids, and they went to tearing my car up looking for—I asked him what they was looking for, they said drugs, and they said I sold one them some drugs and it was a white guy said I sold to him.

Q. The Washington that showed up in court wasn't a white guy?

A. When they stopped my car the white guy said you sold me drugs.

Q. Thomas Washington that showed up in court is a black male, isn't he?

A. Yes.

Q. Did your lawyers asked whether or not he had any type of brain surgery?

A. No. (E.H. 15, 16)

Thomas Washington testified that he was no longer employed by North Little Rock Police Department and that he had retired,

at age 36 in 1993, because of medical problems. Washington further stated the following:

Q. Relative to that have you had brain surgery?

A. Brain surgery?

A. No, after I left the police department my doctor discovered I had an aneurysm on the right side and I had an aneurysm clipped.

Q. Now, did you start having any problems in '91?

A. Not in '91, no. I think it started roughly around '92 latter part of '92.

Q. When your problems first started did it begin with any type of shaking or inability to drive or remember things?

A. No it began with a seizure. That's how it begun. With a seizure and the first seizure started I was driving one day. I was working and driving one day and I started having funny feeling. I pulled over to the side of the road and I radioed in to my surveillance unit that I was having a problem and they were—I told them I was some where in Little Rock. Approximately sometime later they found me and from there I went to the hospital.

Q. And that began you say in '93. Are you certain it was '93 or could it have been in '91 or '92?

A. It wasn't in '91. I am thinking it was maybe in the latter part of '92.(E.H. 26–28)

Washington also testified that on the date of the alleged purchase of the drugs from Petitioner, he did not know the name of Petitioner, which is different to what he testified to during the court trial and that he did not run a license check on the automobile that the female, who sold the drugs to him, entered after the alleged sale and received the name Janice Johnson. (E.H. 40, 41)

Washington further stated that he placed the one piece crack of crack cocaine that he purchased from the female in a plastic bag, heat sealed the plastic bag and placed it in a manila envelope and that he never used a ziplock bag. When asked if he had an explanation for the testimony of Linda Burdock, the forensic chemist, that when she received the evidence for analysis, the evidence was in a ziplock bag, Washington testified as follows:

A. That was a mistake. I never used ziplock bags.

A. I'm not saying lying. She made a mistake.

Q. Do you know Linda Burdock is with the state crime laboratory?

A. No.

The Court: But did not use a ziplock bag?

The Witness: No, sir. We don't use ziplock bags. We use open plastic bags so we can heat seal them. We do not use ziplock bags. (E.H. 68, 69)

Officer Washington further testified to the following:

Q. Do you recall yourself having looked for the evidence that morning (the initial trial date of January 16, 1992), or whether they couldn't find it?

A. I don't recall, sir. (E.H. 71, 72)

Lee Ellen Fowler, the deputy prosecutor, testified as follows:

A. . . . On that date (initial trial date of January 16, 1992) all of the parties appeared. I believe that there was a problem at that time. Officer Washington indicated to me that he could not locate the actual cocaine evidence and based on that representation I requested a continuance. (E.H. 82, 83).

## DISCUSSION

Petitioner has persisted all along that she is actually innocent of the charges and that at the time the alleged offense occurred, she was at home with family members and friends preparing food; that she was denied the effective assistance of trial counsel; and that the evidence was insufficient to sustain her conviction and as such she was denied due process of law.

Respondent asserts that Petitioner did not present the actual innocent and effective assistance claims to the Arkansas courts and

because of this failure there is a procedural default and that this precludes this Court from reviewing these claims.

■ After carefully reviewing the record in this action and the evidence received during the evidentiary hearing conducted by this Court, the Court is persuaded that Petitioner has produced reliable and convincing new evidence, not available to the state trial judge who conducted the bench trial, that demonstrates that it is more likely than not that with this evidence no reasonable fact finder would have convicted Petitioner. Stated differently, this Court is persuaded that the "probative force of the newly presented evidence in connection with the evidence of guilt addressed at trial" demonstrates Petitioner's actual innocence warranting her admission through this "gateway" justifying a review and consideration of her constitutional claims despite the state's assertion of procedural default. See: *Schlup v. Delo*, 513 U.S. 298, 326–28, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Accordingly, the Court will review Petitioner's constitutional claims.

■ Evidence not previously available which directly contradicts the key evidence against Petitioner in the state trial has been presented during the evidentiary hearing.

As previously noted, Petitioner's initial trial was scheduled for January 16, 1992, but when the case was called, the State of Arkansas announced that the State was not prepared to proceed due to the fact that the evidence could not be located and that the North Little Rock Police Department needed time to locate the evidence and requested a continuance. The case was continued for three months.

During the evidentiary hearing, Officer Washington, the case agent and key witness for the State and who was scheduled to testify at the initial scheduled hearing on January 16, 1992, testified that he was unaware that the evidence, the crack cocaine that he allegedly purchased from Petitioner, could not be located and that the case had been continued to enable the North Little Rock Police Department an opportunity to locate the missing evidence. Officer Washington stated that this was unusual and that that had never occurred before. He could not offer an explanation for the unusual circumstance. What is most disturbing and troublesome is the fact that the case agent and prime witness was unaware that the key evidence that he later testified about three months later was really the same and unadulterated cocaine that he had purchased from Petitioner. In addition, this circumstance raises not only a serious question regarding the adequate chain of custody of the evidence, but of equal force, a question as to whether the evidence received in evidence had been tampered with. Linda Burdech, the forensic chemist, testified during Petitioner's trial that when she received the evidence for analysis, the evidence was in a sealed plastic evidence bag with a small ziplock bag with three pieces of rock like substance. Linda Burdech further testified that the ziplock bag was not sealed that it was zipped. But she later testified that "[t]he zip's been ripped off it." (T–B 70). Linda Burdech also stated that the plastic evidence bag was in the same condition when she sealed the package, "except for the tear up here." Officer Washington testified during the evidentiary hearing that he never used a ziplock bag and that the forensic chemist was mistaken. Officer Washington stressed that "... we don't use ziplock bags. We use open plastic bags so we can seal them." (E.H. 68, 69). The state trial court did not have the benefit of this evidence.

Petitioner has come forward with additional evidence not previously available which directly contradicts strong evidence against her during the trial. Officer Washington testified during the trial that he immediately ran a license check on the automobile that the female entered who sold him the crack cocaine;[4] and that the automobile was registered to Petitioner, but during the evidentiary hearing, Officer Washington testified that "I did not run the license myself." In addition, Officer Washington contradicted his testimony given during the trial that Petitioner

---

4. Officer Washington made the following comment regarding the license check on the scene: "I observed Miss Janice Donald leaving the bar-

ber shop ... and entering the late model Chevy Chevette bearing Arkansas license number SPG 907, which returned to her ..." (T–B 39)

was driving a "late model Chevy Chevette." He conceded that during the encounter that in reality he was not sure whether the vehicle was a late model Chevy Chevette and that it only appeared to be a late model Chevy; and that he erroneously stated categorically that it was a late model Chevy Chevette. (E.H. 41, 42).[5]

Petitioner testified, during the evidentiary hearing, that when she was arrested on May 6, 1991, approximately thirty-three days after the date of the alleged sale of drugs to Officer Washington, a white police officer stated she had sold him the alleged drugs, but when she appeared in court for trial, Officer Washington, a black male, appeared instead. (E.H. 16, 17).

Another instance of newly discovered evidence that raises strong doubt and the lack of confidence in the trial's outcome is Officer Washington's physical and mental condition near the time frame of the alleged purchase of the drugs and trial of the case due to medical problems he was having.

During the evidentiary hearing, Officer Washington testified that he retired from the North Little Rock Police Department at age 36 in 1993 because of medical problems. He testified that his problems commenced around 1992 and this problem began with the following incident:

A. No it began with a seizure. That's how it begun. With a seizure and the first seizure started I was driving one day. I was working and driving one day and I started having funny feeling. I pulled over to the side of the road and I radioed in to my surveillance unit that I was having a problem and they were—I told them I was somewhere in Little Rock. Approximately, sometime later, they found me and from there I went to the hospital.

Q. And that began you say in '93. Are you certain it was '93 or could it have been in '91 or '92?

A. It wasn't in '91. I am thinking it was maybe in the latter part of '92. (E.H. 26, 28).

5. The female was not arrested by Officer Washington at the time of the alleged purchase of crack cocaine, but was arrested approximately

Officer Washington stated that his physician who performed the surgery in order to deal with his medical problem was no longer residing in Arkansas. However, a medical report was submitted to the Court on February 27, 1998, by Respondent pursuant to a court order, setting forth, among other things, the following:

PAST MEDICAL HISTORY:

Remarkable for sarcoidosis which has been present for a long time. This is a systemic problem and has affected the central nervous system. He has a seizure disorder secondary to this. He has a history of hypertension and hypopituitarism, history of asthma, history of depression, iatrogenic cushing syndrome. Steroid inducted diabetes and exogenous obesity.

PAST SURGICAL HISTORY:

Previous surgeries include aneurysm clipping in 1992, lung biopsy on the right, right knee surgery and history of burns to the left leg.

MEDICATIONS:
1. Imuran.
2. Tegretol.
3. Trandate.
4. Prednisone—now 7.5 mg daily.
5. Levothyroxine.
6. Testosterone injections.
7. Occasional Carafate.

REVIEW OF SYSTEMS:

Blurred vision, dizziness and some memory loss. (See: Respondent's Exhibit "E").

During the trial, Gail Mallett, friend of Petitioner, and Elroy O. Donald, Petitioner's brother, testified that Petitioner never owned or possessed a Chevette automobile; that Petitioner owned a brown 98 Oldsmobile. These two witnesses also testified that Petitioner was at her home preparing food during the alleged time frame that Officer Washington said that he purchased crack cocaine from Petitioner.

33 days following the alleged sale of cocaine to Officer Washington.

Officer Washington testified during the trial that he had recently moved from El Dorado, Arkansas, to North Little Rock; that he did not describe the female in his field notes, nor did he indicate the female's complexion, height, weight, hair texture or length or describe what she was wearing. In addition, he stated that he never met the female before or had any dealing with her.

Significantly, the state trial judge, in finding the Petitioner guilty of the charges, conceded that the State's evidence possessed "discrepancies or short comings." The trial judge did not have the benefit of the aforementioned contradictions as well as other discrepancies discussed above.

It is readily apparent that the conflict between Officer Washington and the forensic chemist, the State's key and only witnesses testifying in the State's case, regarding the type of container employed in securing the drugs and the conflict between Officer Washington and the prosecuting attorney that on the initial scheduled trial date that the evidence was missing and could not be located warranting a continuance for three months, indeed, demonstrate that reasonable precautions were not employed by the State to preserve the original condition of the key evidence and to avoid any likelihood of any tampering.

The prosecuting attorney who represented the State during Petitioner's trial testified as follows during the evidentiary hearing:

"A.... On that date (initial trial date of January 16, 1992) all of the parties appeared. I believe that there was a problem at that time. Officer Washington indicated to me that he could not locate the actual cocaine evidence and based on that representation I requested a continuance." (E.H. 82, 83).

However, in reviewing the transcript covering the January 16, 1992, proceeding, the following represents the prosecuting attorney's comments to the trial court about the missing evidence:

Your Honor, all my witnesses are here; however, we're having a little difficulty locating the evidence in this case. And the property officer at the North Little Rock Police Department has been looking diligently since first thing this morning, and he's going through the evidence piece by piece. However, he called back when we were having a recess and said it would probably take the rest of the day to go through everything ... the State would ask for a continuance in order to locate the evidence. (T–A 9,10).

Given the fact that this Court finds the newly discovered evidence, which was not available at trial, credible and reliable, it follows that the Court also finds some deficiency in the fact finding process during Petitioner's trial and, accordingly, this Court does not accord a presumption of correctness to the trial court's findings. See: 28 U.S.C. § 2254(d) and (e). In other words, the Court is convinced that given the newly discovered evidence, it is more likely than not that a reasonable fact finder would not have found Petitioner guilty beyond a reasonable doubt.

## I.

▮▮▮ Relative to Petitioner's constitutional claim of ineffective assistance of trial counsel, Petitioner alleged the following in her *pro se* Petition filed in this Court:

I had three different attorneys they would not do anything in my defense they just wanted me to plead guilty. (See also: Petitioner's *pro se* pleading under date of July 7, 1997).

Petitioner is asserting that her trial counsel was ineffective due to inadequate investigation of the circumstances surrounding her case and inadequate cross examination of the case agent and key witness for the State.

After carefully reviewing the trial proceedings and the newly discovered evidence, this Court is persuaded Petitioner's trial counsel failed to subject the State's case to a meaningful adversarial testing, accordingly, Petitioner was denied her Sixth Amendment right of effective assistance of counsel as secured under the Fourteenth Amendment. See: *United States v. Cronic,* 466 U.S. 648, 660, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984).

The state trial judge in finding the Petitioner guilty of the charges stated in no uncertain terms that the State's case pos-

sessed "discrepancies or shortcomings." In other words, the State presented a weak case. See: *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984) (stating that a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support).

During the evidentiary hearing, Officer Washington readily admitted that he did not give accurate testimony regarding the type of vehicle that the female was driving who allegedly sold him drugs and that he did not personally check the license number that the vehicle was bearing at the scene which resulted in a report showing Petitioner as the registered owner. In addition, Officer Washington gave testimony that contradicted the State's reason for seeking a continuance of the January 16, 1992, scheduled trial date in order to find the missing evidence; and the testimony of the forensic chemist regarding the type of plastic bag that contained the evidence indicating that during the time frame in which the alleged purchase of drugs were made from Petitioner and, indeed, during the time frame of Petitioner's trial, Officer Washington had a history of medical problems implicating blurred vision, dizziness and some memory loss as well as a systemic problem that affected the central nervous system. This Court is persuaded that Petitioner was denied effective assistance of counsel at the trial phase.

Inasmuch as this Court has found in effect that no reasonable fact finder would have found Petitioner guilty beyond a reasonable doubt given the totality of the circumstances discussed herein, it is the judgment and order of this Court that Petitioner's conviction and sentence in Case Number 91–1785 and Case Number 89–1623,[6] the revocation proceedings, be vacated, set aside and held for naught; and that Respondent and the State of Arkansas release her unconditionally forthwith.[7]

---

6. The State and defense counsel entered into a stipulation providing that "the testimony that was presented by the State in Case No. 91–1785 (the charge of selling rock cocaine to Officer Washington) be introduced into the record in [a scheduled] revocation hearing in Case No. 89–1623." Case No. 89–1623 relates to a five year probation that Petitioner received on November 27, 1989, in connection with a separate criminal charge.

7. The Court has not addressed Petitioner's constitutional claim of being denied the right to jury trial inasmuch as the Court is persuaded that this issue is moot given the fact that Petitioner has prevailed on other claims asserted.