# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-2078

———————

| | |
|---|---|
| Janice Marie Johnson, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Arkansas. |
| Larry Norris, Director, | * |
| Arkansas Department of Correction, | * |
| | * |
| Appellant. | * |

———————

Submitted:  December 11, 1998

Filed: March 10, 1999

———————

Before RICHARD S. ARNOLD, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Janice Marie Johnson was convicted in Arkansas state court for selling crack cocaine to an undercover police officer named Thomas Washington and was sentenced to twenty years of imprisonment.  Her conviction and sentence were upheld on appeal.  After rehearing was denied, she petitioned for state postconviction relief, but her petition was denied as untimely.

Ms. Johnson then petitioned for federal habeas relief under 28 U.S.C. § 2254, claiming that she was actually innocent, that her privilege against self-incrimination was violated, that she was denied the effective assistance of counsel, that there was insufficient evidence to support her conviction, and that she was denied a fair and impartial trial. She later amended her claim, alleging in addition that she was denied her right to a jury trial. After an evidentiary hearing, the district court granted her petition. See Johnson v. Norris, 999 F. Supp. 1256 (E.D. Ark. 1998). We reverse.

I.

Federal courts may not consider claims made in habeas petitions unless those claims have first been fairly presented to an appropriate state court. See, e.g., Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989), cert. denied, 497 U.S. 1006 (1990). Of all of the claims that Ms. Johnson makes in her present petition, only the one challenging the sufficiency of the evidence was ever raised in the state courts, and it was abandoned in this appeal.

Ms. Johnson can overcome her default by demonstrating either cause and prejudice, see Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977), or a fundamental miscarriage of justice, see Sawyer v. Whitley, 505 U.S. 333, 340 (1992). She contends, and the district court held, that she was actually innocent of the charge against her and therefore that her conviction was a fundamental miscarriage of justice. To benefit from this exception to the principle of procedural bar, Ms. Johnson must produce "new reliable evidence ... not presented at trial," Schlup v. Delo, 513 U.S. 298, 324 (1995), that is so forceful that "it is more likely than not that no reasonable [trier of fact] would have convicted [her] in the light of the new evidence," id. at 327.

Ms. Johnson contends that several evidentiary items that are new and reliable tend to show her actual innocence. She points first to an illness suffered by Officer

Washington, who was the arresting officer and the state's only eyewitness. Medical records and testimony admitted at the evidentiary hearing in the district court tended to show that Officer Washington was suffering from central nervous system sarcoidosis, a condition that can cause blurred vision, memory loss, and seizures. The disease forced Officer Washington to retire from the police force in early 1993.

Ms. Johnson maintains, and the district court apparently believed, that Officer Washington's illness was likely to have caused memory loss and blurred vision at the time that he testified at her trial, thereby undermining the credibility of his testimony. According to the testimony presented at the evidentiary hearing, however, Officer Washington's health problems did not begin until late in 1992, when he had a seizure while driving his car. Ms. Johnson directs our attention to medical reports that state that the seizure disorder was "secondary" to the sarcoidosis, and argues that the disease and its effects must therefore have been present before that seizure. This assertion is wholly unconfirmed by any evidence on the record, however, and it would be mere speculation to claim that Officer Washington suffered from memory loss and blurred vision as early as the time when he testified. Furthermore, Officer Washington testified that his medical problems "began with the seizure." Thus, the evidence of Officer Washington's illness, although new, does little if anything to carry the heavy burden that the law imposes on Ms. Johnson.

In granting the writ, the district court also gave weight to the fact that Officer Washington's testimony at the evidentiary hearing ran contrary to his trial testimony. First of all, he admitted that he did not personally perform the license check on Ms. Johnson's car as he stated at the trial, and that he was mistaken when he testified that her car was a late-model blue Chevrolet Chevette. This new testimony, however, does not change the facts that the license check demonstrated that the car was registered to Ms. Johnson, and that the car was a small, late-model blue sedan. Officer Washington also corrected his trial testimony that he knew Ms. Johnson by name when he bought the cocaine from her. Any confusion about her name, of

-3-

course, would not hinder his ability to identify her visibly, which is what he did at the trial. Thus, although there were discrepancies between his testimony at the trial and that at the evidentiary hearing, the new testimony that he offered was not exculpatory.

Officer Washington's testimony at the evidentiary hearing about the type of bag in which the cocaine was kept is also offered as new and reliable evidence of Ms. Johnson's innocence. The forensic chemist, Linda Burdick, testified at trial that the evidence was in a zip-lock bag that was in a heat-sealed plastic bag, which was in a sealed envelope. At the hearing, Officer Washington stated that he did not use zip-lock bags, so that Ms. Burdick must have been mistaken. The district court saw this evidence as significant proof of tampering or mishandling of the evidence.

We note, in the first place, that we doubt that this evidence is new. "The evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 118 S. Ct. 1807 (1998). There is no showing that Officer Washington would not have testified at trial the same way that he did at the habeas hearing had he been asked the right questions, and so we are not entirely satisfied that the evidence was unavailable and could not have been discovered at the time of Ms. Johnson's trial. Assuming, however, for the sake of argument, that the evidence is new, we are of the view that Ms. Johnson's argument nevertheless fails.

Based on our review of the relevant testimony, it appears to us that the fact that there were two plastic bags (a heat-sealed bag and a zip-lock bag) caused some confusion in the testimony of Officer Washington and Ms. Burdick. The testimony of the two witnesses, however, is easily reconcilable. Ms. Burdick testified at trial that the cocaine was in a zip-lock bag, which was in a heat-sealed bag, which was in a sealed envelope, and Officer Washington testified at the hearing that the cocaine was given to him in a small plastic bag and that he sealed the evidence in a plastic

evidence bag and then sealed it in an envelope. The small bag of cocaine that Officer Washington was given by Ms. Johnson could have been the zip-lock bag to which Ms. Burdick referred. When Officer Washington testified that Ms. Burdick was mistaken about the evidence being in a zip-lock bag because he never used zip-lock bags, he could have been under the mistaken impression that Ms. Burdick had testified that the evidence bag itself was a zip-lock bag, rather than that there was a zip-lock bag in the heat-sealed evidence bag. There is nothing in the record inconsistent with the testimony of these two witnesses being reconciled in this way. The confusion about the bags would not therefore have significantly weakened the prosecution's case.

In granting the writ, the district court also relied on testimony given by Ms. Johnson herself at the evidentiary hearing. Ms. Johnson testified that although Officer Washington identified her in open court while she was seated at the defense table, he had been unable to identify her when she confronted him in the courtroom before the trial. She also testified that when she was arrested, a white police officer stated that she had sold him the drugs, but then Officer Washington, who was black, testified at the trial that <u>he</u> had bought the drugs from her. But Ms. Johnson, by hypothesis, was aware of all of these facts at the time of trial, and could have testified to them then. This evidence therefore cannot be new.

## II.

Much of the evidence adduced by Ms. Johnson is not new and reliable. The evidence that is new and reliable does not demonstrate that it is more likely than not that no reasonable trier of fact would have convicted her if that evidence had been presented at trial. Ms. Johnson thus cannot lift the bar that precludes us from considering her claims, and we therefore reverse the judgment of the district court and remand the case for the entry of the appropriate judgment.

HEANEY, Circuit Judge, dissenting.

I would affirm the district court's grant of habeas relief. In my view, the trial court deprived appellee of her constitutional right to a jury trial. This denial in and of itself is a sufficient reason to grant appellee's petition for habeas relief. The record shows that appellee initially consented to a bench trial. On the day that the case was set for trial, January 16, 1992, appellee asked for a jury trial. The trial court promptly denied the request saying, "You are trying to avoid going to trial, so we are going to trial today." This action, of course, did not constitute an abuse of discretion; but immediately thereafter the state asked for a continuance saying that it did not have the physical evidence to go to trial that day. Suddenly the need for a prompt trial vanished, and the court set a trial date for March 13, 1992 to permit the state to obtain the physical evidence it needed. Again, I do not quarrel with the court's decision, but it clearly then had a duty to grant the appellee's motion for a jury trial as any reason for not doing so had vanished. Moreover, the appellee was under no obligation to renew her motion, which had been made minutes before.

An additional basis for granting the writ is the one given by the trial court that appellee was actually innocent of the offense. In my view, the district court's opinion more than adequately sets forth the reasons leading to its decision. There is an additional reason, which I believe is persuasive. The arresting undercover officer testified that he put the $10 rock of crack that he said he purchased from appellee in a plastic bag and sent it to the state crime lab. The problem is that the bag that the state lab received did not contain a $10 rock of crack (about 1 gram), but rather only .048 grams of crack, an amount not only at odds with the amount testified to by the buyer but an amount so insignificant as to lead to the conclusion that no sale had, in fact, taken place. At least the evidence to support a sale had not been presented. If the only confusion was whether the crack was in a zip-lock bag or a heat-sealed bag, then I would agree that the confusion would not be sufficient to weaken the prosecution's case to the point that habeas relief should be granted. But here, taking the evidence in the light most favorable to the state, there is a total lack of evidence to support the state's claim that one of its agents bought a one-gram rock of cocaine

base from appellee and that she should be sentenced to 25 years for having made the sale.

Accordingly, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.