**Mark Steven VAN BUSKIRK, Petitioner–Appellant,**

v.

**George H. BALDWIN, Respondent–Appellee.**

**No. 00–35640.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2001

Filed June 28, 2001

Before: GOODWIN, GREENBERG,[1] and RAWLINSON, Circuit Judges.

GOODWIN, Circuit Judge:

Mark Steven Van Buskirk was convicted on his plea of guilty of murdering Linda Newman on March 15, 1993. After failing to obtain post conviction relief in the state courts, he filed a 28 U.S.C. § 2254 petition in the District of Oregon. He appeals the judgment denying relief. We affirm.

The petitioner's principal argument on appeal is that he was denied effective assistance of counsel throughout his state trial and post conviction proceedings because none of his lawyers sufficiently investigated his mental health history and thereby denied him an insanity defense. On September 6, 1994, he filed a state post-conviction petition. That petition identified two claims of trial court error and four claims of ineffective assistance of counsel, but these claims were unrelated to trial counsel's alleged failure to investigate petitioner's mental condition, and have been abandoned.

Van Buskirk filed his federal petition in 1997. The pending claims are therefore subject to the strict limitations of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244 (2000). Under subsection (d)(1) of 28 U.S.C. § 2244, a one year limitations period "shall apply to an application for a writ of habeas corpus." That statute imposes a duty of due diligence by providing that the statute runs not only from the date on which the state court judgment became final, but

Craig E. Weinerman, Assistant Federal Public Defender, Eugene, Oregon, for the petitioner-appellant.

Janet A. Klapstein, Assistant Attorney General, Salem, Oregon, for the respondent-appellee.

---

1. The Honorable Morton I. Greenberg, United States Circuit Judge for the Third Circuit, sitting by designation.

from "the date on which the factual predicate of the claim or claims presented could have been discovered in the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Petitioner continued to pursue substantially his abandoned state court points in his original filing in the district court. It was not until December of 1998, with new counsel, that he filed an amended petition claiming for the first time that he was entitled to an insanity defense which his original counsel failed to investigate.

Petitioner now claims that his then counsel knew that his behavior at the time of his arrest, confession, and during preliminary proceedings was that of a mentally disturbed person. He claims that counsel should have learned about, recognized the significance of, and inquired about the result of, two automobile accidents in 1991 and 1992. He contends that competent counsel then would have learned that he had been in a coma for ten days, and that he had suffered severe brain damage. Counsel early on did know that Van Buskirk was an alcoholic, that he had been injured in an auto accident, and that he had demonstrated suicidal tendencies. Petitioner now claims that because counsel did not learn about his brain damage, which he asserts had so altered his personality that he was insane, or so emotionally disturbed at the time of the crime, that counsel was incompetent. Therefore, he now asserts that he is entitled to the "actual innocence" gateway to a delayed collateral attack on his conviction. See *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

The district court permitted Van Buskirk to amend. Pursuant to Fed.R.Civ.P. 15(a)(1), the amendment relates back to the original pleading. This appeal now raises two questions: (1) Is his amended petition time barred by 28 U.S.C. 2244(d)(1)(D)? (2) If not, was it meritorious enough to require an evidentiary hearing?

The district court treated the amendment as relating back to the original petition, and therefore timely. For the purposes of this case we do not need to reach the complex questions lurking in the time bar of the AEDPA. The trial court decided the case on the merits, and on the merits it was right as a matter of law.

Petitioner attempts to support his belated restructuring of his case by tendering, as newly discovered evidence, the opinion of Dr. Muriel Lezak, a distinguished, internationally recognized consulting psychologist. Dr. Lezak's published writing on the relationship between brain damage and criminal responsibility has made her a familiar witness in criminal trials.

The district court assumed the reliability and qualifications of Dr. Lezak's opinion to the effect that the petitioner was insane or emotionally disturbed at the time of the crime. However, the district court held that the proffered testimony did not satisfy the *Schlup* exception for "actual innocence."

The district court found that Van Buskirk, by failing to raise the brain damage claim in the state courts, had procedurally defaulted on his new claim that trial counsel provided ineffective assistance by failing to investigate his mental condition. Van Buskirk argued that his default was not a knowing waiver and should be excused under *Schlup*. *See* 513 U.S. at 314, 115 S.Ct. 851. For this point he argues that the neuropsychological evaluation conducted by Dr. Lezak constituted newly discovered evidence that would allow him to pass through the actual innocence gateway to present for the first time his theory that his counsel had been ineffective for completely different reasons than those he pursued in his post conviction proceedings

in the state courts, and initially in the district court.

Dr. Lezak's report concluded that:

[t]he brain injury and resulting cognitive and control deficits would appear to have been sufficient to affect his ability to control his behavior (i.e., "conform the conduct to the requirements of the law") in that ideational preservation (he was completely focused on conforming his behavior to the standard he felt necessary to win his wife back-he was completely unappreciative of the nature of their relationship problems) plus the mental inflexibility that made him unable to take in and fully comprehend or even attend to-all the elements in the situation including alternative behaviors rendered him incapable of controlling his behavior to conform to what he knew was right or wrong. In short, inability to alter or redirect his mental focus exacerbated by acute emotional distress would make him even more single minded and thus at the moment actually incapable of thinking of other courses of action or about moral demands on his behavior other than that of preserving himself for his marriage.

The district court determined that Van Buskirk failed to show that he was actually innocent because the Lezak evaluation did not demonstrate that he satisfied the test under Oregon law for insanity and extreme emotional disturbance. The court further held that the evaluation did not establish actual innocence. The court noted that before Van Buskirk pled guilty, Dr. Robert Luther, the psychiatrist hired by the state, had reached a contrary conclusion. This leaves a compound question. The first half of the question is whether the *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) standard for testing the adequacy of representation is trumped by the actual innocence claim propped up by newly discovered expert testimony. The second half of this question is whether, if the amended petition presents a new fact question, triable by a new jury, on the degree of homicide, or guilt or innocence, should the district court have had an evidentiary hearing to decide whether the guilty plea was the result of incompetent legal advice.

 Taking the first half of the question first, the test is whether, with the new evidence, it is more likely than not that no reasonable juror would have found Petitioner guilty of premeditated murder. See *Schlup*, 513 U.S. at 327, 115 S.Ct. 851. Van Buskirk contends that the district court's analysis misapplied the above standard and therefore must be reversed.

After restating the *Schlup* actual innocence gateway standard, the district court concluded that "Dr. Muriel Lezak's opinion is, at most, *an expert opinion that a jury could, under state law, choose to reject.*" (emphasis added). Van Buskirk takes issue with this statement, arguing that the court's conclusion that Van Buskirk failed to pass through the actual innocence gateway because a jury "could have" chosen to reject Dr. Lezak's opinion is inconsistent with the standard announced in *Schlup*. Petitioner contends that the district court confused the *Schlup* standard with the "insufficiency of evidence" standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. The *Schlup* Court explained:

[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review. In contrast, under the gateway standard we describe today, the newly presented evidence may indeed call into question the credibility of the witnesses presented at trial.... Second, and more fundamentally, the focus of the inquiry is different under *Jackson* than under [*Murray v.*] *Carrier* [477 U.S. 478, 106 S.Ct. 2639, 91

L.Ed.2d 397 (1986)]. Under *Jackson,* the use of the word "could" focuses the inquiry on the power of the trier of fact to reach its conclusion. Under *Carrier,* the use of the word "would" focuses the inquiry on the likely behavior of the trier of fact.

Indeed, our adoption of the phrase "more likely than not" reflects this distinction.

*Schlup,* 513 U.S. at 330, 115 S.Ct. 851.

The district court's statement implies that there was evidence that could have supported a jury's decision to convict-that the conviction was in the realm of possibility. But the statement does not predict the "likely behavior of the trier of fact," which is what is required under *Schlup. Id.*

Nevertheless, the district court's misstatement probably amounted to harmless error. After making the statement, the district court observed that Dr. Lezak's evaluation was inconsistent with much of the evidence in the record. Indeed, Dr. Luther's neuropsychiatric evaluation pronounced that Van Buskirk exhibited "no evidence of psychosis." The state showed that several mental health practitioners had declined to admit Van Buskirk for psychiatric treatment after he committed the offense. On the basis of this evidence, the district court observed that the record is "replete with uncontested evidence of Petitioner's actions and statements about the crime that are contrary to Dr. Lezak's opinion about his mental state at the time."

Thus, the court held that "even if [Dr. Lezak's] opinion was totally unrebutted (which it is not), [it] is not of sufficient probative force to allow this court to conclude that ... it is more likely than not that no reasonable juror would have found Petitioner guilty of premeditated murder...." *Id.* It is therefore clear that the court was aware of and applied the correct "more likely than not" probabilistic standard under *Schlup,* even though it misstated the standard a few lines before.

■ Moreover, 28 U.S.C. § 2254(e)(2) establishes a "due diligence" predicate to claims of actual innocence. The statute provides that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: .... (ii) a factual predicate that could not have been previously developed through the exercise of due diligence...." 28 U.S.C. § 2254(e)(2). Appellee cites to *Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) for the proposition that a "freestanding miscarriage of justice" claim of federal court jurisdiction has been eliminated by AEDPA. Here there is little question that the evidence on which Van Buskirk bases his ineffective assistance claim was discoverable and available to counsel at the time the post-conviction matter was litigated.

Van Buskirk, however, argues that *Schlup* provides the "complete two-part test" for determining the gateway question, and that the evidentiary hearing referred to in Section 2254(e)(2) is an entirely separate matter from the *Schlup* question whether to review a defaulted claim. According to Van Buskirk, 28 U.S.C. § 2254(e)(2) applies to freestanding actual innocence claims under *Herrera,* but not to procedural gateway claims under *Schlup. See Carriger v. Stewart,* 132 F.3d 463, 478 (9th Cir.1997) (en banc) (distinguishing between freestanding and gateway actual innocence claims). The petitioner cites to an Eighth Circuit case, *Amrine v. Bowersox,* 128 F.3d 1222, 1229 (8th Cir.1997) (en banc) for the proposition that a petitioner must merely make a "sufficient showing to require such a hearing if his evidence, if credited, could establish actual innocence."

However, a more recent line of precedent from the Eighth Circuit establishes that evidence of actual innocence excuses a procedural default "only if it could not have been discovered earlier through the exercise of due diligence." *Morris v. Dormire,* 217 F.3d 556, 559 (8th Cir.2000) (quoting *Johnson v. Norris,* 170 F.3d 816, 818 (8th Cir.1999)). In fact, the *Johnson* court quoted *Amrine* in support of its holding that for purposes of habeas review of procedurally defaulted claims, based on new reliable evidence showing petitioner's actual innocence, "[t]he evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Johnson,* 170 F.3d at 818 (quoting *Amrine,* 128 F.3d at 1230).

■ We agree with the Eighth Circuit. The controlling statute imposes a due diligence predicate for actual innocence claims. Van Buskirk's procedural default cannot be excused.

**AFFIRMED.**