**Scott D. NEUENDORF, Petitioner,**

v.

**Leonard GRAVES, Warden, Respondent.**

**No. C 99–2083–MWB.**

United States District Court, N.D. Iowa, Eastern Division.

Aug. 4, 2000.

---

David N. Nadler, Cedar Rapids, IA, for Petitioner.

Thomas W. Andrews, Asst. Iowa Atty. Gen., Des Moines, IA, for Respondent.

## WITHDRAWAL OF REFERRAL TO MAGISTRATE JUDGE AND MEMORANDUM OPINION AND ORDER REGARDING RESPONDENT'S MOTION TO DISMISS

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. *WITHDRAWAL OF REFERRAL* ........................................... 1147

II. *ORDER REGARDING MOTION TO DISMISS* ............................. 1147
 A. *Background* ................................................. 1147
 B. *Legal Analysis* ............................................. 1150
 1. *Claims asserted* ...................................... 1150
 2. *Timeliness of federal habeas corpus petitions* ........ 1152
 a. *Applicability of the § 2244(d)(1)(B) starting point* .......... 1153
 b. *Applicability of the § 2244(d)(1)(D) starting point* .......... 1154
 c. *Does "actual innocence" avoid § 2244(d)(1) time limitations?* .... 1155
 3. *Sufficiency of Neuendorf's claim of "actual innocence"* .............. 1157
 a. *Requirements of an "actual innocence" claim* ................. 1157
 b. *Neuendorf's allegations of "actual innocence"* ................. 1160

*III. CONCLUSION* ..................................................1162

Seeking a gateway to federal *habeas corpus* review, despite the respondent's contention that the present petition is untimely and procedurally barred, the petitioner asserts that he is "actually innocent" of the crime of second-degree sexual abuse of which he was convicted in 1992. No Circuit Court of Appeals has expressly held that the "actual innocence" gateway to federal *habeas corpus* review of defaulted claims remains open after codification of statutory time limitations and exceptions in the Anti–Terrorism and Effective Death Penalty Act (AEDPA) in 1996, although some courts have suggested that it does. Even if the gateway remains open, the court must determine whether this petitioner's allegations of "actual innocence" permit him to walk through it to obtain federal *habeas corpus* review.

## *I. WITHDRAWAL OF REFERRAL*

Before considering the respondent's motion to dismiss the petitioner's petition for a writ of *habeas corpus*, however, this court must first address its prior referral of this matter to a magistrate judge. By order dated November 22, 1999, the undersigned referred this petition for *habeas corpus* relief pursuant to 28 U.S.C. § 2254, in its entirety, to United States Magistrate Judge Paul A. Zoss pursuant to 28 U.S.C. § 636(b)(1)(B). However, the court finds that it is now appropriate to withdraw that referral. Therefore, the November 22, 1999, referral of this matter to the magistrate judge will be withdrawn and the undersigned will rule upon the respondent's pending motion to dismiss.

1. Although Neuendorf's petition does not indicate when it was executed and placed in the prison mail system, *see Nichols v. Bowersox,* 172 F.3d 1068, 1077 (8th Cir.1999) (*en banc*) (holding that "for purposes of applying 28 U.S.C. § 2244(d), a pro se prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court"), his petition, filing fee, and application to proceed *in forma pau-*

## *II. ORDER REGARDING MOTION TO DISMISS*

### *A. Background*

Petitioner Scott D. Neuendorf filed the present action for *habeas corpus* relief on or before August 24, 1999,[1] seeking relief from his conviction for second-degree sexual abuse on March 7, 1992, after a jury trial. Neuendorf was sentenced to twenty-five years imprisonment on his conviction. Neuendorf's conviction was reversed on appeal to the Iowa Court of Appeals, but was ultimately reinstated by the Iowa Supreme Court. *See State v. Neuendorf,* 509 N.W.2d 743 (Iowa 1993). Neuendorf thereafter filed a state application for post-conviction relief, which was denied by the Iowa district court and the Iowa Court of Appeals in unpublished decisions. The Iowa Supreme Court denied further review, and *procedendo* from the Iowa Court of Appeals issued on August 26, 1997. Neuendorf filed a second state post-conviction relief application on December 1, 1998, but the Iowa district court dismissed that application as time-barred under Iowa Code § 822.3 on April 1, 1999. Neuendorf did not appeal the denial of his second post-conviction relief application.

Instead, on or before August 24, 1999, Neuendorf filed the present petition for federal *habeas corpus* relief. In his federal petition, Neuendorf asserts, as "Ground One," that he received ineffective assistance of counsel—amounting to a total failure of counsel to provide representation—during his prosecution for second-degree sexual abuse, making his conviction fundamentally flawed, and, as "Ground Two,"

*peris* were received and docketed by the Clerk of Court on August 24, 1999. In an initial review order dated September 16, 1999, the court denied the application to proceed *in forma pauperis,* on the ground that it was "moot," because Neuendorf had submitted the statutory filing fee, but directed the respondent to file an answer to the petition in accordance with the RULES GOVERNING SECTION 2254 CASES.

that other evidence not originally introduced at his trial can now be produced to demonstrate that he is actually innocent of the crime of which he was convicted. Although Neuendorf does not specifically identify in his petition the form or source of the "new evidence" on which he relies, he does contend that it is "actual proof beyond trial testimony that substantiates [Barbara McKinney's] presence," that is, presence of a defense witness at the time Neuendorf contends the victim, Maria Spates, agreed to have sex with Neuendorf and his companions for money, "and [the witness's] 20–year acquaintance with Maria Spates," which Spates denied at trial. Petition, ¶ 11.B.1. Neuendorf has always contended that no sexual abuse occurred, because Spates had engaged in consensual sex for money, and he now contends that this new evidence establishes his actual innocence, because "[i]t is not, for example, second degree sexual abuse to engage in consensual intercourse with a prostitute." *Id.*

On October 22, 1999, the respondent answered Neuendorf's petition and moved to dismiss it on the grounds that the petition was time-barred, that it failed to comply with Rule 2(c) of the Rules Governing Section 2254 Cases, and that Neuendorf's "actual innocence" claim is improperly exhausted, procedurally defaulted, fails to state a claim on its face, and fails on its merits.[2] Following the filing of respondent's motion to dismiss, a magistrate judge of this court *sua sponte* directed the Clerk of Court to appoint counsel to represent Neuendorf on December 2, 1999.

Notwithstanding appointment of counsel, Neuendorf initially filed a *pro se* resistance to the respondent's motion to dismiss on December 10, 1999,[3] in which he contended that he had not yet been afforded the opportunity to present his evidence of "actual innocence," but that the evidence is strong enough to overcome the court's confidence in the outcome of his state trial. He contends that his "actual innocence" opens a gateway to review, even if his claims might otherwise be time-barred. As to the nature of his evidence of "actual innocence," Neuendorf contends that "[r]ecanted testimony of the government's star witness is the quality of evidence Petitioner refers to here" and that "evidence pertaining to the government's subornation of perjury is the quality of formerly unavailable facts at the time of the Petitioner's trial." [Petitioner's *Pro se* ] Response to Motion to Dismiss and Brief in Support at ii. However, Neuendorf did not immediately identify the source of any "new evidence," instead attacking the credibility of Spates's testimony as inconsistent with other evidence at trial and varying so greatly in the degree of detail on various matters that Neuendorf contends Spates's testimony showed it had been "coached" and that the prosecution had suborned "perjury." The only indication of the source of any "new evidence" appears in the penultimate paragraph of Neuendorf's *pro se* resistance, in which Neuendorf asserts, "There was talk about Maria [Spates] recanting her trial testimony, to which Barbara McKinney can testify to in an evidentiary hearing." *Id.* at 5.

**2.** The respondent filed a supplement to his motion to dismiss on November 12, 1999, consisting of the *procedendo* issued on August 26, 1997, by the Iowa Court of Appeals in Neuendorf's first post-conviction relief proceeding.

**3.** On the same day Neuendorf filed his *pro se* resistance to the motion to dismiss, the respondent filed a motion to reconsider and vacate the order appointing counsel. Neuendorf filed an "Application for Appointment of

Counsel and Resistance to Respondent's Motion To Reconsider and Vacate" on December 27, 1999, and an identical application and resistance on December 29, 1999. On December 28, 1999, the respondent notified the court by telephone that he was withdrawing his motion to reconsider and vacate, and the court therefore denied that motion as moot. The respondent did in fact file a withdrawal of his motion to vacate the order appointing counsel on December 29, 1999.

Neuendorf then filed a *pro se* "Supplemental Resistance to State's Motion to Dismiss Petition" on December 27, 1999, in which he argued, in support of the viability of "Ground One" of his petition, that the prosecutor had engaged in misconduct, consisting of subornation of perjury by Maria Spates concerning testimony about her acquaintance with McKinney, whether McKinney was present at the time Spates entered the car with Neuendorf and his companion, and the extent of Spates's injuries received during the sexual abuse incident. Neuendorf contends that the prosecutor's misconduct was so egregious that it caused a fundamental miscarriage of justice, and that trial counsel was ineffective, because she let the perjured testimony go unchallenged, which also tarnished the constitutionality of his conviction. Neuendorf asserted that, "After the trial and conviction of Scott Neuendorf, McKinney came forward with further information (given to her by Spates and others) that Spates had lied about Scott's involv[e]ment and other key portions of her trial testimony." [Petitioner's *Pro Se*] Supplemental Resistance to State's Motion to. Dismiss Petition at ¶ 4. Neuendorf does not explain when and how this information came to McKinney or when and how it was discovered by Neuendorf.

In a supplement to his motion to dismiss, filed on December 29, 1999, the respondent challenged what he described as Neuendorf's "newly minted" claim of prosecutorial subornation of perjury. Supplement to Respondent's Motion to Dismiss at 1. Treating the subornation of perjury allegations as an elaboration of Neuendorf's contention that there is "new evidence" of his actual innocence, the respondent contends that the evidence is insufficiently identified to amount to more than a bald assertion of its existence and effect. Treating the allegations of subornation of perjury as a separate claim—which the respondent contends has not in fact been pleaded in the present petition—the respondent asserts that any subornation of perjury claim is "unexhausted," and would

therefore make Neuendorf's present petition a "mixed petition," which should be dismissed. The respondent contends that no prosecutorial misconduct claim has ever been presented to any state court.

After extensions of time to do so, Neuendorf's court-appointed counsel filed a resistance to the respondent's motion to dismiss and a brief in support of that resistance on April 7, 2000. Counsel characterized Neuendorf's *pro se* petition, filed on or before August 24, 1999, as asserting *three* grounds for relief: (1) ineffective assistance of counsel amounting to a total lack of counsel; (2) newly discovered evidence of actual innocence including evidence of subornation of perjury by the prosecutor; and (3) prosecutorial subornation of perjury showing actual innocence. Neuendorf's counsel contends that the present action is not time-barred under 28 U.S.C. § 2244(d)(1), as the respondent contends, because it was timely with respect to the deadlines found in § 2244(d)(1)(B) and/or (D). Counsel contends that § 2244(d)(1)(B) is applicable, because the state failed to disclose information that the prosecutor coerced Spates into giving perjured testimony and Neuendorf did not learn of that information until Leighten Manning, another prisoner, recently revealed to Neuendorf that Spates had told him she was coerced into implicating Neuendorf as a perpetrator of the crime against her. With regard to § 2244(d)(1)(D), counsel contends that Neuendorf did not discover his "new evidence" sooner, because his incarceration, including several months of prison-wide "lockdown," and his indigency prevented him from locating the evidence, and that Mr. Manning's information only recently came to light. Even if statutory grounds for delaying the beginning of the limitation period for the present action do not exist, counsel contends that "equitable tolling" is still available and is applicable here, because Neuendorf was prevented by the prosecution from discovering exculpatory evidence from Spates, the "lockdown" at

his prison prevented him from working on his case or going to the law library, and his counsel on direct appeal and in his first post-conviction relief proceedings failed timely to respond to his requests for records of his case. Moreover, counsel contends that Neuendorf's claims of actual innocence open a gateway to review of otherwise untimely claims for *habeas corpus* relief. Counsel contends further that Neuendorf's *pro se* petition substantially complied with the requirements of Rule 2(c), so that the portion of the respondent's motion to dismiss grounded on non-compliance with that Rule should be denied. Counsel also contends that Neuendorf has adequately stated his claim of actual innocence and that such a claim does not require "exhaustion," or if it does, that exhaustion is excused, because there is no presently available means to obtain state review for the claim, and that this court has the discretion to entertain a "mixed petition." Counsel also submitted affidavits of Leighten Manning, the fellow inmate whose information purportedly provides some of the basis for Neuendorf's claim of newly discovered evidence of "actual innocence," as well as affidavits from Neuendorf's parents.

The respondent filed a reply brief and documents in support of his motion to dismiss on April 17, 2000. The respondent contends that the judge-made doctrine of "actual innocence" as a gateway to review of unexhausted claims cannot "trump" the limitations of the Anti–Terrorism and Effective Death Penalty Act (AEDPA). The respondent also contends that Neuendorf has not identified any federal constitutional right that is implicated by his claim of "actual innocence." Additionally, the respondent contends that the "actual innocence" claim here remains nothing more than unsupported assertions of innocence, that an "actual innocence" claim premised on supposed subornation of perjury has never been asserted in a verified petition, so that the claim is not properly before the court, and that such a claim is not properly exhausted. In any event, the respondent also challenges the adequacy of the evidence—if it exists—to meet the requirements of a claim of "actual innocence" to open a gateway to federal *habeas corpus* review. Although the respondent moved to strike Neuendorf's affidavits accompanying the resistance by counsel, the respondent also moved to expand the record to submit affidavits refuting Neuendorf's claim of subornation of perjury. By order dated May 23, 2000, a magistrate judge of this court permitted both parties to submit their competing affidavits.

## B. Legal Analysis

### 1. Claims asserted

■ The first question the court must resolve to rule on the respondent's motion to dismiss is just what claims are actually asserted in Neuendorf's present federal *habeas corpus* action. As noted above, Neuendorf's *pro se* petition, filed on or before August 24, 1999, identified only two grounds for federal *habeas* relief: (1) a claim, asserted as "Ground One," that Neuendorf received ineffective assistance of counsel during his prosecution for second-degree sexual abuse, and (2) a claim, asserted as "Ground Two," that other evidence not originally introduced at Neuendorf's trial can now be produced to demonstrate that he is actually innocent of the crime of which he was convicted. Although Neuendorf does not specifically identify in his petition the form or source of the "new evidence" on which he relies, he does contend that it is "actual proof beyond trial testimony that substantiates [Barbara McKinney's] presence"—that is, presence of this defense witness at the time the victim, Maria Spates, purportedly agreed to have sex with Neuendorf and his companions for money, as Neuendorf contends, or was forced into a vehicle at gunpoint, as the victim testified—"and [McKinney's] 20–year acquaintance with Maria Spates"—where Spates denied at trial that she knew McKinney. Petition, ¶ 11.B.1. In the petition, Neuendorf contends that this "new evidence" establishes

his "actual innocence," because "[i]t is not, for example, second degree sexual abuse to engage in consensual intercourse with a prostitute." *Id. See* Petition at ¶ 11.A & B.

Although Neuendorf did not identify the form or source of the new evidence or when and how it was discovered, there is no inference in the petition that the "new evidence" consisted of evidence that Spates's testimony included perjury suborned by the prosecutor. Instead, the content and effect of the "new evidence," as alleged, was that it "substantiates" the testimony of defense witness Barbara McKinney and thus establishes that any sexual intercourse with the victim was consensual. Specific allegations that the "new evidence" demonstrates that Spates perjured herself, that the prosecutor suborned that perjury, and that Neuendorf's trial counsel was ineffective for failing to discover and demonstrate the perjury appear only in Neuendorf's *pro se* resistance and supplemental resistance to the motion to dismiss and in counsel's much later resistance. No amendment to the petition has ever been offered to assert either a "recantation" or "subornation of perjury" claim in the several months since the respondent's motion to dismiss was filed, even though Neuendorf's court-appointed counsel entered an appearance on Neuendorf's behalf and filed an additional resistance to the motion to dismiss.

▪ Although this court must "liberally construe a pro se habeas petition, [the Eighth Circuit Court of Appeals] do[es] not require a district court to recognize an unarticulated argument." *Miller v. Kemna*, 207 F.3d 1096, 1097 (8th Cir.2000) (citing *Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir.1996), for the liberal construction

requirement, and *Mack v. Caspari*, 92 F.3d 637, 640 (8th Cir.1996), *cert. denied*, 520 U.S. 1109, 117 S.Ct. 1117, 137 L.Ed.2d 317 (1997), for the limitation on such construction). Thus, where a *habeas* petition contained no mention of appellate counsel, the Eighth Circuit Court of Appeals concluded that the ineffective assistance of appellate counsel was not adequately raised in the petition, and the appellate court declined to consider that claim. *Id.; but see Petty v. Card*, 195 F.3d 399, 399–400 (8th Cir.1999) ("liberal construction" of a *pro se* petitioner's *habeas* petition included claims presented in the petition and "supplemental pleadings"), *petition for cert. filed*, (Feb. 15, 2000) (No. 99–8243). Here, the court declines to treat a ground not specifically stated or reasonably implied in the petition as part of the present action, where the respondent promptly challenged the adequacy of the claims as actually asserted in the petition by filing a motion to dismiss, the petitioner was represented by counsel during the several months he was allowed to formulate a resistance to the motion to dismiss, no verified pleading asserting additional grounds for relief was ever filed, and no request for leave to amend the petition to assert additional or clarified claims was ever made, either by the petitioner *pro se* or by his counsel.

Therefore, the court will consider Neuendorf to be asserting only those claims actually asserted in his petition, and will rule on the respondent's motion to dismiss as it pertains to those claims; the court will not consider those claims as they may have been subsequently elaborated by allegations in various briefs, nor will the court consider such additional claims as appear to be asserted only in briefs.[4] The

---

4. Moreover, declining to construe the claims in the present action so broadly as to include unpleaded claims of recantation by the victim and subornation of perjury by the prosecutor will permit consideration of those claims in a separate petition, on adequate, verified allegations, and the timeliness of such a petition can then be considered in light of the timing

of discovery of new evidence pertinent to those claims. The court recognizes that various procedural bars to such a separate petition, including timeliness, *see* 28 U.S.C. § 2244(d), and the bar on second or successive petitions unless authorized, *see* 28 U.S.C. § 2244(b), might be encountered, but a second or successive petition that is based on a

claims properly before the court are therefore (1) a claim of ineffective assistance of trial counsel, amounting to a complete failure to represent Neuendorf, and (2) a claim of newly discovered evidence of "actual innocence" in the form of evidence that "substantiates" the testimony of defense witness Barbara McKinney as to her acquaintance with the victim, Maria Spates, and her presence at the time Spates entered the vehicle with Neuendorf and his companions.

### 2. Timeliness of federal habeas corpus petitions

The respondent challenges the timeliness of the claims actually asserted in Neuendorf's petition. Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), petitions for *habeas corpus* relief are subject to a one-year statute of limitations as provided in 28 U.S.C. § 2244(d)(1). "By the terms of § 2244(d)(1), the one-year limitation period begins to run on one of several possible dates, including the date on which the state court judgment against the petitioner became final." *Ford v. Bowersox,* 178 F.3d 522, 523 (8th Cir.1999).[5] Where the petitioner's judgment became final before the effective date of the AEDPA on April 24, 1996, the Eighth Circuit Court of Appeals has adopted a one-year "grace" period, which ended on April 24, 1997, for the filing of *habeas* petitions. *See Peterson v. Gammon,* 200 F.3d 1202, 1204 (8th Cir.

2000); *Mills v. Norris,* 187 F.3d 881, 882 (8th Cir.1999); *Ford,* 178 F.3d at 523; *Moore v. United States,* 173 F.3d 1131, 1135–36 (8th Cir.1999); *Nichols v. Bowersox,* 172 F.3d 1068, 1073 (8th Cir.1999) (*en banc* ). Moreover,

> In *Nichols v. Bowersox,* 172 F.3d 1068, 1073 (8th Cir.1999) (en banc), [the Eighth Circuit Court of Appeals] held that time before the effective date of AEDPA, April 24, 1996, is not counted in computing the one-year period of limitation. Prisoners whose judgments of conviction became final before the effective date of AEDPA are given a one-year period after that date, or until April 24, 1997, plus any additional periods during which the statute is tolled.

*Peterson,* 200 F.3d at 1204.

Here, Neuendorf's conviction became "final" either on December 22, 1993, when, on direct appeal, the Iowa Supreme Court vacated the judgment of the Iowa Court of Appeals and affirmed the judgment of the Iowa district court, or possibly as late as January 20, 1994, the date on which the Iowa Supreme Court denied Neuendorf's request for rehearing. *See* 28 U.S.C. § 2244(d)(1)(A) (the limitation period runs from the date the state judgment becomes final upon conclusion of direct review). Either date is well before the effective date of the AEDPA, April 24, 1996. Thus, Neuendorf could have filed a timely *habeas* petition within the one-year "grace" limita-

"factual predicate [that] could not have been discovered previously through the exercise of due diligence" provides an exception to the bar on abuse of the writ. *See id.* at § 2244(b)(2)(B).

**5.** The limitations provision provides as follows:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) & (2).

tion period, from the effective date of the AEDPA until April 24, 1997. *See Peterson,* 200 F.3d at 1204; *Mills,* 187 F.3d at 882; *Ford,* 178 F.3d at 523; *Moore,* 173 F.3d at 1135–36; *Nichols,* 172 F.3d at 1073. This he did not do.

Consequently, Neuendorf's petition for *habeas corpus* relief is only timely if the limitation period in § 2244(d)(1)(A) was tolled for all but a period of less than one year between April 24, 1996, and August 24, 1999, the date on which the petition in this action was filed by application of the "prison mailbox" rule to this *habeas* action, *See Nichols,* 172 F.3d at 1077; note 1, *supra,* or the limitation period began to run from a date other than the date on which Neuendorf's conviction became final. *See* 28 U.S.C. § 2244(d)(1)(B)–(D); *Ford,* 178 F.3d at 523 ("By the terms of § 2244(d)(1), the one-year limitation period begins to run on one of several possible dates, including the date on which the state court judgment against the petitioner became final."). Neuendorf contends that § 2244(d)(1)(A) does not provide the limitation period in this case. Rather, he contends that his petition is timely under either § 2244(d)(1)(B) or § 2244(d)(1)(D). The court will consider these contentions in turn.

#### a. Applicability of the § 2244(d)(1)(B) starting point

■■■ Neuendorf contends that the time for his federal *habeas* petition did not begin to run until less than a year before his petition was filed, because the starting point for the limitation period on his petition is defined by § 2244(d)(1)(B). Section 2244(d)(1)(B) provides that "[t]he limitation period shall run from ... the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). A petitioner relying on this provision for the limitation period for a federal *habeas* action must "allege facts that establish that

he [or she] was so inhibited by the State's action that he was unable to file and state a legal cause of action before the limitation period expired." *Whalem/Hunt v. Early,* 204 F.3d 907, 909 (9th Cir.2000) (action in which a *habeas* petitioner asserted that inadequacies of the prison library prevented him from learning of the AEDPA's limitation period), *petition for reh'g en banc granted,* 218 F.3d 1078 (9th Cir.2000) (NO. 99–55627). Also, the petitioner's filing of a petition for *habeas* relief before the alleged impediment was lifted suggests that the state action did not prevent the petitioner from timely filing the action. *Felder v. Johnson,* 204 F.3d 168, 171 n. 9 (5th Cir.2000), *petition for cert. filed,* (May 8, 2000) (No. 99–10243). Similarly, where the petitioner was able to present his constitutional claims in state court before expiration of the AEDPA deadline, despite the state's action, he was necessarily able to formulate and present such claims in compliance with the AEDPA's deadline for filing a federal *habeas* petition despite the state's action. *Whalem/Hunt,* 204 F.3d at 909.

Neuendorf contends that § 2244(d)(1)(B) establishes the limitation period applicable to his petition, because the state failed to disclose information that Spates was coerced by the prosecutor into implicating Neuendorf in the crime against her, and that impediment to his "actual innocence" claim was not lifted until Leighten Manning revealed to Neuendorf that Spates claimed she was coerced. This argument fails, because Neuendorf has not "allege[d] facts that establish that he was so inhibited by the [state's action] that he was unable to file and state a legal cause of action before the limitation period expired." *Whalem/Hunt,* 204 F.3d at 909; *Felder,* 204 F.3d at 171 n. 9.

First, none of Neuendorf's arguments for the timeliness of his petition under § 2244(d)(1)(B) relates to the claims Neuendorf actually asserted in his petition as filed on August 24, 1999. Instead, Neuendorf asserts the timeliness of the action under § 2244(d)(1)(B) on the basis

of when impediments to his "recantation" and "subornation of perjury" claims were lifted.[6] Second, as to the claims properly presented, where McKinney testified at trial, and Neuendorf contested the sufficiency of the evidence of non-consensual sex in light of McKinney's testimony, *see Neuendorf,* 509 N.W.2d at 747–48 (affirming Neuendorf's conviction on direct appeal after considering his claim that "the victim was a prostitute and that the sex acts in question were for hire and thus consensual"), and, further, where Neuendorf now contends that the "new evidence" would only "substantiate" McKinney's prior testimony, Neuendorf has not "allege[d] facts that establish that he was so inhibited by the [state's action]," whatever that state action was, "that he was unable to file and state a legal cause of action" premised on the argument that McKinney's testimony established the consensual nature of sex with the victim "before the limitation period expired." *Whalem/Hunt,* 204 F.3d at 909. Moreover, Neuendorf does not identify the form of the "new evidence," when he discovered it, or what state action inhibited his ability to discover it or otherwise impeded his ability to assert a claim premised on it, such that his assertion that § 2244(d)(1)(B) provides the applicable deadline is unsupported and conclusory. Therefore, § 2244(d)(1)(B) does not provide the limitation period for the present *habeas* petition.

### b. Applicability of the § 2244(d)(1)(D) starting point

■ Next, Neuendorf contends that the limitation period applicable to his claim is that stated in § 2244(d)(1)(D). Section 2244(d)(1)(D) provides that "[t]he limitation period shall run from ... the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

The Tenth Circuit Court of Appeals recently decided that the "due diligence" requirement in this provision should be considered in light of a *habeas* petitioner's confinement in prison and any special restrictions that incarceration might impose on such a person. *See Easterwood v. Champion,* 213 F.3d 1321, 1323 (10th Cir. 2000). In *Easterwood,* the factual predicate at issue was the mental instability of the state's expert witness in the petitioner's case, which factual predicate was not apparent until it was mentioned in another decision of the Tenth Circuit Court of Appeals. *Id.* The court noted that, "[u]nlike the general population which has greater access to court opinions, prisoners must rely exclusively upon the prison law library to discover information contained in new cases." *Id.* The court concluded that "[h]olding that a prisoner could with 'due diligence' discover information related in a case before the prison law library has access to a copy of the opinion simply ignores the reality of the prison system." *Id.* However, the Fifth Circuit Court of Appeals has rejected the proposition that the "factual predicate" for a federal *habeas* action is the denial of the petitioner's

---

6. The court is not persuaded that Neuendorf's arguments would establish the timeliness of his *unpleaded* claims of "recantation" and "subornation of perjury," either. Neuendorf filed the present petition on or before August 24, 1999, despite the fact that Manning's affidavit indicates that he did not provide the information on which Neuendorf contends he relied until April 3, 2000. Thus, Neuendorf apparently filed the present petition before the state impediment of which he complains was lifted by revelations from Manning, making § 2244(d)(1)(B) inapplicable. *See Felder,* 204 F.3d at 171 n. 9. Moreover, Neuendorf filed his second state post-conviction relief application on December 1, 1998, asserting, *inter alia,* that Spates had recanted her trial testimony, but the Iowa district court found that Neuendorf could have asserted this claim within three years of his conviction, as required by Iowa Code § 822.8. Thus, it appears that Neuendorf was already aware of a factual basis for his "new evidence" claim of victim recantation long before any impediment from state action was lifted by Manning's revelations. *See Whalem/Hunt,* 204 F.3d at 909. However, the court need not decide the timeliness of these *unpleaded* claims, because they are not properly before the court.

claims in state post-conviction relief proceedings. *See Ybanez v. Johnson,* 204 F.3d 645, 646 (5th Cir.2000), *petition for cert. filed,* (June 29, 2000) (No. 00–5012). The court concluded that such an interpretation would accept an "extraordinary proposition: the factual predicate for their claims consists neither of evidence nor events at trial but in the state court's rulings on [the petitioner's] constitutional claims." *Id.* The court also noted that the *habeas* limitations statute already excluded from the limitation period time during which a petitioner's state claim was pending in a state court. *Id.* The Fifth Circuit Court of Appeals has also suggested that § 2244(d)(1)(D) applies to those who *could not* discover the factual predicate for their claims, not those who "sleep on their rights." *Fisher v. Johnson,* 174 F.3d 710, 715 & n. 14 (5th Cir.1999). The Fifth Circuit Court of Appeals has also held that § 2244(d)(1)(D) does not "convey a statutory right to an extended delay ... while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim." *Flanagan v. Johnson,* 154 F.3d 196, 199 (5th Cir. 1998).

In this case, Neuendorf contends that he did not discover his "new evidence" sooner, because his incarceration, including several months of prison-wide "lockdown," and his indigency prevented him from locating the evidence. He also contends that Mr. Manning's information only recently came to light. Again, Mr. Manning's information is irrelevant to the claims actually asserted in the petition filed in this action. Although incarceration, and especially a prison-wide "lockdown" that further limits a prisoner's access to information, might impose practical impediments to discovery of predicate facts beyond those experienced by members of the general public, *see Easterwood,* 213 F.3d at 1323, the court is not convinced that Neuendorf *could not* have discovered the predicate facts on which the claims he actually asserted in his petition rely in time to file a timely petition for federal *habeas* relief. *Fisher,* 174 F.3d

at 715 & .n. 14. Neuendorf has certainly contested the effectiveness of his trial counsel throughout his direct appeals and state post-conviction relief proceedings, just as he has challenged the sufficiency of the evidence of non-consensual sex in light of McKinney's testimony. *See Neuendorf,* 509 N.W.2d at 747–48. As the Fifth Circuit Court of Appeals explained, § 2244(d)(1)(D) does not "convey a statutory right to an extended delay ... while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim." *Flanagan,* 154 F.3d at 199. Moreover, since Neuendorf neither identifies the form of his "new evidence" or when and how it was discovered, his contentions that it was only just discovered and could not have been discovered sooner with due diligence are, again, unsupported and conclusory. Therefore, § 2244(d)(1)(D) does *not* provide the applicable limitation period in this case.

### c. Does "actual innocence" avoid § 2244(d)(1) time limitations?

Thus, the timeliness of the present action depends on whether "actual innocence" avoids the time limitations imposed by Congress in § 2244(d)(1) and, of course, the further question of whether Neuendorf's "new evidence" is sufficient to open such a gateway around the time limitations. The Eighth Circuit Court of Appeals has not expressly ruled on the first of these questions. However, the Eighth Circuit Court of Appeals has repeatedly recognized that "actual innocence" can, at least theoretically, overcome other procedural defaults, allowing review in *habeas* actions. *See Holt v. Bowersox,* 191 F.3d 970, 974 (8th Cir.1999) ("[P]rocedural default may be excused and the petition reviewed if a petitioner can prove ... that a constitutional error led to his or her conviction despite his or her actual innocence."); *accord Lee v. Kemna,* 213 F.3d 1037, 1038 (8th Cir.2000); *Mansfield v. Dormire,* 202 F.3d 1018, 1024 (8th Cir. 2000); *Johnson v. Norris,* 170 F.3d 816,

817 (8th Cir.1999). The reasonable conclusion from these decisions is that "actual innocence" can overcome the procedural default of timeliness requirements, even as timeliness is now codified under the AEDPA in 28 U.S.C. § 2244(d)(1).

As the Second Circuit Courts of Appeals explained in *Lucidore v. New York State Div. of Parole*, 209 F.3d 107 (2d Cir.2000), *petition for cert. filed*, (July 5, 2000) (No. 00–40), several Circuit Courts of Appeals have specifically suggested that the "actual innocence" gateway must remain open, notwithstanding the AEDPA's express time limitations, to avoid raising serious constitutional questions:

> Here, the issues involved in Lucidore's habeas petition—*i.e.*, whether AEDPA's statute of limitations violates the Suspension Clause and whether, in order to survive a constitutional challenge, AEDPA must be read to include an "actual innocence" exception—are "debatable among jurists of reason" as well as "adequate to deserve encouragement to proceed further." Notably, in *Triestman v. United States*, 124 F.3d 361, 378–79 (2d Cir.1997), we observed, without deciding the issue, that denial under AEDPA of collateral review to a party claiming actual innocence could raise serious Eighth Amendment and due process questions. Similarly, in *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.1998) [, *cert. denied*, 525 U.S. 891, 119 S.Ct. 210, 142 L.Ed.2d 173 (1998) ], the Tenth Circuit suggested that where a constitutional violation results in the conviction of someone who is actually innocent, AEDPA's limitations period might raise serious constitutional questions. In *In re Dorsainvil*, 119 F.3d 245, 248 (3d Cir. 1997), moreover, the Third Circuit noted that "[w]ere no other avenue of judicial review available for a party who claims that s/he is factually or legally innocent as a result of a previously unavailable statutory interpretation, we would be faced with a thorny constitutional issue." In citing these cases, we do not suggest, in any way, that a specter of unconstitutionality necessarily is haunting AEDPA's statute of limitations—merely that this is an important question that the courts have not yet addressed, much less resolved, and that given the unsettled nature of these issues, the certificate of appealability issued in this case was justified.

*Lucidore*, 209 F.3d at 112–13; *but see Felder*, 204 F.3d at 171 (decision of the Fifth Circuit Court of Appeals holding that the petitioner's "actual innocence claim also does not constitute a 'rare and exceptional' circumstance, given that many prisoners maintain they are innocent," and thus did not provide a basis for equitable tolling of the AEDPA's time limitations). However, in *Lucidore*, the Second Circuit Court of Appeals, like the majority of its predecessors to recognize the importance of the constitutionality question, found that it could avoid passing on that question, because the petitioner had failed to demonstrate that he was actually innocent, so that the petitioner could not obtain review via this gateway, even if it was available. *Id.* at 113–14; *see also Miller*, 141 F.3d at 978 (although "actual innocence" might constitute a circumstance in which the limitations period under § 2244(d) for an action pursuant to § 2254 should be equitably tolled, the petitioner had not alleged his actual innocence); *Triestman*, 124 F.3d at 372 n. 15 (concluding that the petitioner's "actual innocence" claim "suffer[ed] from [a] lack of 'newness' "); *and compare United States v. Lloyd*, 188 F.3d 184, 187–89 (3d Cir.1999) (concluding that the comparable timeliness provisions for a § 2255 action should be liberally construed to avoid constitutionality problems and that the petitioner had therefore filed a timely petition sufficiently alleging actual innocence of the offense of which he had been convicted); *In re Dorsainvil*, 119 F.3d at 248 (although the lack of *habeas* review for a person claiming "actual innocence" in light of the AEDPA's time limitations would present a "thorny constitutional is-

sue," the petitioner in that case had recourse to 28 U.S.C. § 2241).

Similarly, several federal district courts have assumed that "actual innocence" would excuse non-compliance with the AEDPA's statute of limitations. *See Rockwell v. Jones*, 2000 WL 973675, *4–*5 (E.D.Mich. June 30, 2000) (assuming, without deciding, that "actual innocence" provided a gateway for review of *habeas* claims that are untimely under § 2244(d)(1), but finding no adequate showing of "actual innocence"); *Silvestre v. United States*, 55 F.Supp.2d 266, 268 (S.D.N.Y.1999) (concluding that, even if a claim of "actual innocence" permitted *habeas* review for a federal prisoner pursuant to § 2241, where an action pursuant to § 2255 was time-barred, the petitioner could not establish his "actual innocence," owing to the overwhelming level of proof presented by the government); *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1273 (D.Haw.1999) (reading *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), to require equitable tolling of the AEDPA's statute of limitations upon a showing of "actual innocence," but noting that the petitioner had not asserted his "actual innocence"); *Cromwell v. Keane*, 33 F.Supp.2d 282, 287–88 (S.D.N.Y.1999) (agreeing with the conclusion in *Alexander v. Keane*, 991 F.Supp. 329, 338 (S.D.N.Y.1998), that the court should not consider whether constitutionality concerns required recognition of an "actual innocence" exception to the AEDPA's timeliness requirements, if there was no adequate showing of "actual innocence," and finding, as in *Alexander*, that the petitioner had not made a sufficient showing of "actual innocence"); *United States v. Zuno–Arce*, 25 F.Supp.2d 1087, 1101–02 (C.D.Cal.1998) (concluding in a § 2255 action that, under *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995),

the AEDPA's one-year statute of limitations would not apply to a defendant's claims if the defendant could avail himself of the "miscarriage of justice gateway" by making a "colorable showing of factual innocence," but finding no sufficient showing of "actual innocence"), *aff'd on other grounds*, 209 F.3d 1095 (9th Cir.2000); *Thomas v. Straub*, 10 F.Supp.2d 834, 836 (E.D.Mich.1998) (even if "actual innocence" excuses an otherwise untimely petition, the petitioner had failed to show "actual innocence"); *Alexander*, 991 F.Supp. at 339 (finding no sufficient showing of "actual innocence," even if "actual innocence" would avoid the AEDPA's time limitations).

This court will therefore assume for now, without deciding, that a sufficient showing of "actual innocence" would open the gateway to federal *habeas corpus* review, even if the petition in which the claim is asserted is otherwise untimely under the AEDPA. The court will turn instead to the question of whether Neuendorf has sufficiently alleged his "actual innocence" to open this gateway, if it exists. Only if Neuendorf's allegations are sufficient will it be necessary for the court to return to the question of the availability of the gateway.

### 3. Sufficiency of Neuendorf's claim of "actual innocence"

#### a. Requirements of an "actual innocence" claim

 "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Mansfield v. Dormire*, 202 F.3d 1018, 1024 (8th Cir.2000) (citing *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)); [7] *Holt v.*

---

7. For this reason, " '[t]he traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency.' " *Mansfield*, 202 F.3d at 1024 (quoting

*Herrera*, 506 U.S. at 417, 113 S.Ct. 853). In *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), the Supreme Court distinguished between a "gateway" claim of

"actual innocence" and a "substantive" claim of actual innocence as follows:

> As a preliminary matter, it is important to explain the difference between Schlup's claim of actual innocence and the claim of actual innocence asserted in *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In *Herrera,* the petitioner advanced his claim of innocence to support a novel substantive constitutional claim, namely, that the execution of an innocent person would violate the Eighth Amendment. Under petitioner's theory in *Herrera,* even if the proceedings that had resulted in his conviction and sentence were entirely fair and error free, his innocence would render his execution a "constitutionally intolerable event." *Id.,* at 419, 113 S.Ct., at 870 (O'CONNOR, J., concurring).
>
> Schlup's claim of innocence, on the other hand, is procedural, rather than substantive. His constitutional claims are based not on his innocence, but rather on his contention that the ineffectiveness of his counsel, *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and the withholding of evidence by the prosecution, *see Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), denied him the full panoply of protections afforded to criminal defendants by the Constitution. Schlup, however, faces procedural obstacles that he must overcome before a federal court may address the merits of those constitutional claims. Because Schlup has been unable to establish "cause and prejudice" sufficient to excuse his failure to present his evidence in support of his first federal petition, *see McCleskey v. Zant,* 499 U.S. 467, 493–494, 111 S.Ct. 1454, 1469–1470, 113 L.Ed.2d 517 (1991), Schlup may obtain review of his constitutional claims only if he falls within the "narrow class of cases ... implicating a fundamental miscarriage of justice," *id.,* at 494, 111 S.Ct., at 1470. Schlup's claim of innocence is offered only to bring him within this "narrow class of cases."
>
> Schlup's claim thus differs in at least two important ways from that presented in *Herrera.* First, Schlup's claim of innocence does not by itself provide a basis for relief. Instead, his claim for relief depends critically on the validity of his *Strickland* and *Brady* claims. Schlup's claim of innocence is thus "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera,* 506 U.S., at 404, 113 S.Ct., at 862; *see also* 11 F.3d, at 740.
>
> More importantly, a court's assumptions about the validity of the proceedings that resulted in conviction are fundamentally different in Schlup's case than in Herrera's. In *Herrera,* petitioner's claim was evaluated on the assumption that the trial that resulted in his conviction had been error free. In such a case, when a petitioner has been "tried before a jury of his peers, with the full panoply of protections that our Constitution affords criminal defendants," 506 U.S., at 419, 113 S.Ct., at 870 (O'CONNOR, J., concurring), it is appropriate to apply an " 'extraordinarily high' " standard of review, *id.,* at 426, 113 S.Ct., at 874 (O'CONNOR, J., concurring).
>
> Schlup, in contrast, accompanies his claim of innocence with an assertion of constitutional error at trial. For that reason, Schlup's conviction may not be entitled to the same degree of respect as one, such as Herrera's, that is the product of an error free trial. Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner such as Schlup presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.
>
> Consequently, Schlup's evidence of innocence need carry less of a burden. In *Herrera* (on the assumption that petitioner's claim was, in principle, legally well founded), the evidence of innocence would have had to be strong enough to make his execution "constitutionally intolerable" even if his conviction was the product of a fair trial. For Schlup, the evidence must establish sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial.
>
> Our rather full statement of the facts illustrates the foregoing distinction between a substantive *Herrera* claim and Schlup's procedural claim. Three items of evidence are particularly relevant: the affidavit of black inmates attesting to the innocence of a white defendant in a racially motivated killing; the affidavit of Green describing his prompt call for assistance; and the affidavit of Lieutenant Faherty describing Schlup's unhurried walk to the dining room. If there were no question about the fairness of the criminal trial, a *Herrera*-type claim would have to fail unless the federal habeas court is itself convinced that those new facts unquestionably establish Schlup's in-

*Bowersox,* 191 F.3d 970, 974 (8th Cir.1999); *Johnson v. Norris,* 170 F.3d 816, 817 (8th Cir.1999). "Claims of 'actual innocence' are extremely rare and are based on 'factual innocence not mere legal insufficiency.'" *United States v. Lurie,* 207 F.3d 1075, 1077 n. 4 (quoting *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). Such a claim fails where the petitioner's "actual innocence" claim consists of nothing more than an unsupported allegation. *Lurie,* 207 F.3d at 1077 n. 4 (declining to consider whether "actual innocence" provides a gateway to bypass § 2255 requirements and proceed with a § 2241 *habeas* action where only unsupported allegations of "actual innocence" were presented). Rather, as the Eighth Circuit Court of Appeals recently explained, the claim requires satisfaction of two requirements: "An actual innocence claim requires [the petitioner] to show [1] '"new reliable evidence ... not presented at trial"' establishing [2] '"that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence."'" *Lee v. Kemna,* 213 F.3d 1037, 1039 (8th Cir.2000) *(per curiam)* (quoting *Wyldes v. Hundley,* 69 F.3d 247, 253–54 (8th Cir.1995), *cert. denied,* 517 U.S. 1172, 116 S.Ct. 1578, 134 L.Ed.2d 676 (1996), with citations in *Wyldes* omitted); *Roberts v. Bowersox,* 170 F.3d 815, 815 (8th Cir.1999) *(per curiam);*

*Johnson,* 170 F.3d at 817–18; *Malone v. Vasquez,* 138 F.3d 711, 719 (8th Cir.), *cert. denied,* 525 U.S. 953, 119 S.Ct. 384, 142 L.Ed.2d 317 (1998).

As to the "new evidence" requirement, "'[t]he evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" *Johnson,* 170 F.3d at 818 (quoting *Amrine v. Bowersox,* 128 F.3d 1222, 1230 (8th Cir.1997) *(en banc),* *cert. denied,* 523 U.S. 1123, 118 S.Ct. 1807, 140 L.Ed.2d 946 (1998)). Thus, the petitioner cannot make the required "new evidence" showing where for example, "the factual basis for the affidavits he relies on as new evidence existed at the time of trial and could have been presented earlier," *Lee,* 213 F.3d at 1039 (citing *Meadows v. Delo,* 99 F.3d 280, 282 (8th Cir.1996)), where "[t]here is no showing that [the witness] would not have testified at trial the same way that he did at the habeas hearing had he been asked the right questions," *Johnson,* 170 F.3d at 818, or where the allegation consists of no more than an assertion that trial counsel's failure to investigate the circumstances of the crime "probably caused" the petitioner's death sentence. *Malone,* 138 F.3d at 720 (noting that this allegation was insufficient to establish either a "gateway" claim under *Schlup,* 513 U.S. at 317, 115 S.Ct. 851, or to meet "the more exacting standard for a

---

nocence. On the other hand, if the habeas court were merely convinced that those new facts raised sufficient doubt about Schlup's guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error, Schlup's threshold showing of innocence would justify a review of the merits of the constitutional claims.

*Schlup,* 513 U.S. at 313–317, 115 S.Ct. 851 (footnotes omitted) (emphasis in the original). Here, although Neuendorf asserts his "actual innocence" as "Ground Two" for relief in his petition, the court concludes that Neuendorf is asserting a "gateway" claim to review of other constitutional violations, because, like the petitioner in *Schlup,* he "accompanies his claim of innocence with an assertion of constitutional error at trial," *id.* at 316, 115 S.Ct. 851, ineffective assistance of counsel amount-

ing to no representation at all. Petition at ¶ 11.A. Thus, "[Neuendorf's] conviction may not be entitled to the same degree of respect as one ... that is the product of an error free trial." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851. Therefore, "if [Neuendorf] presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, [Neuendorf] should be allowed to pass through the gateway and argue the merits of his underlying claims," albeit "carry[ing] less of a burden" than a petitioner whose trial was otherwise error free: "For [Neuendorf], the evidence must establish sufficient doubt about his guilt to justify the conclusion that his [punishment] would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Id.*

substantive claim of actual innocence"). The evidence must not only be "new," but "reliable," so that "a petitioner must support his claim of innocence with reliable new evidence, whether exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Amrine*, 128 F.3d at 1228 (citing *Schlup*, 513 U.S. at 322–24, 115 S.Ct. 851).

█ Courts from time to time reach the second requirement of an "actual innocence" claim, the impact-on-trial element, assuming, for the sake of argument, that the evidence is indeed "new." *See Lee*, 213 F.3d at 1039; *Johnson*, 170 F.3d at 818. However, even if the evidence is, or is assumed to be, "new," the petitioner must also show "with the required likelihood that reasonable jurors would not have convicted based on [that evidence]." *Lee*, 213 F.3d at 1039. In *Lee*, the court explained that the required likelihood is "that it is more likely than not" that no reasonable juror would have found the petitioner guilty. *Id.; see also Malone*, 138 F.3d at 719 (to obtain review, the petitioner must show that the new evidence is "*sufficiently likely* to warrant consideration of his procedurally defaulted claims") (emphasis added).[8] More specifically, "[i]n deciding whether a petitioner has made the necessary showing of innocence, a federal court must make its own determination of whether the 'probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial' is sufficient to warrant consideration of the otherwise barred claims." *Amrine*, 128 F.3d at 1227 (quoting *Schlup*, 513 U.S. at 330–32, 115 S.Ct. 851).

An actual innocence inquiry is necessarily fact intensive and the district court may be the most appropriate forum to consider whether the new evidence is reliable and what "reasonable triers of fact are likely to do." *Schlup*, [513 U.S.] at 330, 115 S.Ct. at 868. A petitioner can meet the standard even if "the trial record contained sufficient evidence to support the jury's verdict" because the district court must consider "the probative force" of the new evidence together with what was produced at trial.

*Amrine*, 128 F.3d at 1228. The question is, has Neuendorf alleged such evidence in this case?

### b. Neuendorf's allegations of "actual innocence"

█ The court concludes that the answer to that question is no, either as to a "gateway" claim of "actual innocence," which would open a gateway to review of procedurally defaulted constitutional errors, or as to a "substantive" claim of "actual innocence." *See Schlup*, 513 U.S. at 313–17, 115 S.Ct. 851; *see also supra* n. 7. First, and sufficient in itself to close the gateway, Neuendorf's "actual innocence" claim consists of nothing more than an unsupported allegation that some "new evidence," in unknown form, exists that shows his "actual innocence." *See Lurie*, 207 F.3d at 1077 n. 4 (unsupported allegations are insufficient to demonstrate "actual innocence"). Neuendorf's petition gives no indication of the source or form of the "new evidence" on which he relies, beyond a bald assertion that it is "actual proof beyond trial testimony that substantiates [Barbara McKinney's] presence," that is,

8. In *Roberts v. Bowersox*, 170 F.3d 815 (8th Cir.1999) (*per curiam*), the court required that the petitioner's application show the required likelihood "by clear and convincing evidence." *Roberts*, 170 F.3d at 816. However, it is not entirely clear whether the court was applying this standard to a "gateway" claim of "actual innocence" in order to obtain review for a constitutional claim, or a "substantive" claim of "actual innocence" in the absence of any other constitutional error.

*See id.* (considering, first, whether the petitioner had met the requirements of 28 U.S.C. § 44(b)(1) for a second or successive *habeas* petition, and concluding that, "[t]o the extent Roberts may not have raised his claim of actual innocence before, he cannot satisfy the requirements of § 2244(b)(2), and does not attempt to do so," where § 2244(b)(2) permits consideration on *habeas* review of claims "not presented in a prior application" only where certain requirements are met).

presence of a defense witness at the time Neuendorf contends the victim, Maria Spates, agreed to have sex with Neuendorf and his companions for money, "and [the witness's] 20–year acquaintance with Maria Spates," which Spates denied at trial. Petition, ¶ 11.B.1. From this unsupported assertion of the content of the evidence, Neuendorf asserts that its effect would be to establish his actual innocence, because "[i]t is not, for example, second degree sexual abuse to engage in consensual intercourse with a prostitute." *Id.* These conclusory, unsupported allegations simply are not enough to place an "actual innocence" claim before the court. *Lurie,* 207 F.3d at 1077 n. 4.

Furthermore, from Neuendorf's characterization, the evidence is neither entirely "new" nor "reliable." Certainly, as to evidence that McKinney had a long acquaintance with the victim, Maria Spates, such evidence could have been discovered earlier through the exercise of due diligence, not least because McKinney testified that the two had known each other for twenty years. *See Johnson,* 170 F.3d at 818 (defining "new" evidence as evidence that "was not available at trial and could not have been discovered through the exercise of due diligence"); *see also Lee,* 213 F.3d at 1039 (evidence is not "new" where the factual basis existed at the time of trial and could have been presented earlier). Thus, evidence substantiating McKinney's longstanding acquaintance with Spates is not "new." Nor is the evidence of McKinney's "presence" and "acquaintance" sufficiently "reliable" to support an "actual innocence" gateway claim. Neuendorf has not supported his claim with any affidavit outlining "a trustworthy eyewitness account." *See Amrine,* 128 F.3d at 1228. There is virtually no way to test the reliability of the evidence upon which Neuendorf relies, when he has not identified the form or source of the evidence. *Compare Amrine,* 128 F.3d at 1228 (the petitioner's claim was based on an affidavit of the only unchallenged witness at trial in which the witness recanted his trial testimony).

However, even supposing the evidence is "new," and "reliable," and that it "substantiates [Barbara McKinney's] presence and her 20–year acquaintance with Maria Spates," Petition, ¶ 11.B.1, the court concludes that it does not satisfy the second requirement for an "actual innocence" gateway claim. *See Lee,* 213 F.3d at 1039 (assuming, for the sake of argument, that the evidence was "new," and passing on to the second requirement); *Johnson,* 170 F.3d at 818 (same). Although an "actual innocence" inquiry may ordinarily be a fact-intensive inquiry, *see Amrine,* 128 F.3d at 1228, it need not be so here, because the court will assume that the evidence shows what Neuendorf alleges that it does. Even assuming the evidence is entirely credible—a question that would ordinarily require an evidentiary hearing—it still would not show "that it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Lee,* 213 F.3d at 1039 (citations omitted); *Malone,* 138 F.3d at 719. This is so, because the "probative force" of evidence that merely "substantiates" McKinney's acquaintance with Spates and her presence at the time Spates entered the vehicle with Neuendorf and his companions is inconsequential in light of evidence presented at trial that Spates was sexually abused far beyond the scope of any consent she might have given in an agreement to provide sex for money. *See Amrine,* 128 F.3d at 1228 ("a federal court must make its own determination of whether the 'probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial' is sufficient to warrant consideration of the otherwise barred claims") (quoting *Schlup,* 513 U.S. at 330–32, 115 S.Ct. 851). Although it may not be "second degree sexual abuse to engage in consensual intercourse with a prostitute," as Neuendorf contends, *see* Petition, ¶ 11.B.1, evidence at trial established that Spates was subjected to something far different from "consensual intercourse." *Id.* at 1228 (the court

must consider "what 'reasonable triers of fact are likely to do'" in light of the "probative force" of the "new" evidence as opposed to the evidence presented at trial) (quoting *Schlup*, 513 U.S. at 330, 115 S.Ct. 851 ).

In short, even assuming the evidence on which Neuendorf relies in his petition is "new," and "reliable"—both of which the court doubts—and that it shows what Neuendorf contends it shows, *i.e.*, that it "substantiates" McKinney's acquaintance with Spates and her presence at the time Spates entered the vehicle with Neuendorf and his companions, nothing about this evidence establishes "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee*, 213 F.3d at 1039 (internal quotation marks and citations omitted). As such, it is insufficient to open the gateway to federal *habeas* review of procedurally defaulted claims, let alone to meet the more stringent showing of "actual innocence" that would be required to establish a "substantive" claim of "actual innocence." *See Schlup*, 513 U.S. at 316–17, 115 S.Ct. 851 (distinguishing between "gateway" and "substantive" claims of "actual innocence" in part on the basis that the former requires less burdensome proof than the latter); *Malone*, 138 F.3d at 720 (the "new evidence" presented was "insufficient to make out a gateway claim of actual innocence under *Schlup*, let alone the more exacting standard for a substantive claim of actual innocence," citing *Schlup*, 513 U.S. at 317, 115 S.Ct. 851).

### III. CONCLUSION

The November 22, 1999, referral of this matter to the magistrate judge is hereby **withdrawn**. The respondent's October 22, 1999, motion to dismiss is **granted**. Neuendorf's August 24, 1999, petition for *habeas corpus* relief is **dismissed** as untimely and procedurally barred under 28 U.S.C. § 2244(d)(1), because Neuendorf has failed to allege sufficiently a claim of "actual innocence," either as a "substan-

tive" claim, or as a gateway to review of his procedurally defaulted claims.

**IT IS SO ORDERED.**